OPINION
Defendant-appellant Reuben Beavers appeals from his conviction and sentence upon one count of Felonious Assault and two counts of Shooting at or into a Habitation with prior offense of violence specifications and a three-year firearm specification. Beavers contends that his conviction is against the manifest weight of the evidence, that there is insufficient evidence in the record to support a finding that he knowingly caused, or knowingly attempted to cause, physical harm to another by means of a deadly weapon, and that his trial counsel is ineffective for having failed to call several witnesses. We conclude that Beavers' conviction is not against the manifest weight of the evidence. We further conclude that there is evidence in the record to support a finding that Beavers knowingly caused, or knowingly attempted to cause, physical harm to another by means of a deadly weapon. Finally, we conclude that Beavers' ineffective assistance of trial counsel claim is not supported by the record.
Accordingly, the judgment of the trial court is Affirmed.
 I
Some time before 3:00, one morning in October, 1994, Beavers went to an after-hours club to drink and to gamble. The club was located in a residential neighborhood, and was the residence of its owner, Robert Matson, and cook, Joe Haney. Beavers' loud, boisterous drunken behavior caught the attention of Arthur Farmer, the club's "doorman."
Beavers left the club when it closed about 6:45 a.m. Later, Farmer heard a knock on the front door. When Farmer looked out the window to see who was knocking, he noticed Beavers walking away from the club, toward a small red car. Farmer recognized Beavers as the man he had seen earlier causing a commotion.
Once Beavers reached the vehicle, he retrieved an assault rifle from the backseat, cocked it, and began shooting in the direction of the house. Farmer dove to the floor to avoid the gun fire, but was wounded in the foot. Beavers fled after firing more than two dozen rounds of ammunition into the club and residence next door. A police officer who heard the shots testified that the shooting occurred at 7:50 a.m.
Agnes Maston, Robert Maston's ex-wife, testified that she spoke to Beavers on the day of the shooting, twice on the telephone, and once in person. Agnes Maston testified that during the second telephone call, and during the subsequent conversation in person, Beavers acknowledged responsibility for the shooting, and offered to pay for any damage done.
Beavers was arrested and charged with Felonious Assault, and two counts of Improperly Discharging a Firearm at or into a Habitation or School, including prior offense of violence specifications, and a firearm specification. Following a jury trial, Beavers was convicted as charged, and was sentenced accordingly. From his conviction and sentence, Beavers appeals.
 II
Beavers' First Assignment of Error is as follows:
 THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Beavers argues that the jury should have believed his witnesses, and disbelieved the State's witnesses, relying uponState v. Thompkins (1997), 78 Ohio St.3d 380. As the State points out, we have held that in exercising appellate jurisdiction to review the weight of the evidence, we must extend substantial deference to the fact finder's determinations of credibility, since the fact finder is in a position to see and hear the witnesses. State v. Lawson (Aug. 22, 1997), Mont. App. 16288, unreported, citing State v. Martin (1983), 20 Ohio App.3d 172,175, in which the Ohio Supreme Court held that the power of an appellate court to reverse a judgment as being against the weight of the evidence "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
Beavers dismisses the testimony of Agnes Maston, to whom Beavers allegedly admitted that he was responsible for the shooting, because her conversation with Beavers followed her being awakened from sleep by his telephone call, and her testimony was "vague and very undetailed." As the State points out, however, only the first of the three conversations immediately followed Agnes Maston being awakened from sleep. Furthermore, this conversation was of little significance. It was the later conversations in which Agnes Maston indicated that Beavers accepted responsibility for the shooting.
We have reviewed Agnes Maston's testimony, and it does not appear to us to be remarkably vague or undetailed. Nor do we find anything inherently incredible in her testimony.
Beavers attacks the testimony of Arthur Farmer, who was wounded in the shooting, upon the ground that the police report recited that there were no eyewitnesses to the shooting. However, Jonathan Ross, who made the police report, testified at trial that Farmer had, indeed, told him immediately upon his arrival at the scene that Farmer recognized the shooter as someone who had been in the club earlier that morning. Ross testified that the fact that Farmer's identification of the shooter was not included in the police report was an inadvertent mistake. We find nothing inherently incredible in Ross's explanation of the inaccurate police report nor do we find anything inherently incredible in Farmer's testimony.
Beavers also relies upon two of his witnesses, Brandon Carlisle and Virgil Meadows, who testified that they saw the shooter, and that it was not Beavers. The State points out that Carlisle met Beavers while they were in the Montgomery County Jail together, and that the credibility of Carlisle's testimony, as one who just happened to be in a position to witness the shooting, is suspect because he was the only witness, including Beavers himself, who testified that the weapon involved was a pistol, rather than an automatic assault rifle. Furthermore, Carlisle testified that the shooter differed significantly from the description given by Beavers' other witnesses, including Beavers himself, who testified that he and the shooter were very similar, and that the shooter could pass as his brother. Additionally, the State undermined Carlisle's credibility when it came to his explanation of how he came to know Beavers because initially Carlisle testified that he had never met Beavers prior to the shooting; ultimately, Carlisle admitted that he had known Beavers for several years, and that Beavers and Carlisle's brothers were friends.
In view of the State's effective attacks upon Carlisle's credibility, we cannot fault the jury for having discounted Carlisle's testimony.
Virgil Meadows testified that he, also, happened to be within a few feet of the shooter during the shooting, and that the shooter was not Beavers. The State attacked Meadows' credibility based upon his inability to remember any details about the alleged shooter, other than the fact that the alleged shooter was black, despite being able to recall details concerning Beavers' vehicle, location, and companions. Also, the State pointed out that although Meadows knew that Beavers had been arrested for the shooting, Meadows never thought to contact the police or the prosecutor's office to report that the wrong man had been arrested. Again, the State's attacks on Meadows' credibility justified the jury in discounting it.
Beavers next argues Rosalyn Clark, his fifteen-year-old niece, had she been allowed to testify, would have provided exculpatory information that would have made a significant difference in the outcome in the trial. As the State points out, however, Clark did testify in Beavers' behalf. We have reviewed that testimony, and while it was somewhat exculpatory, Clark did not claim to have witnessed the shooting. Furthermore, Beavers is her uncle, and the jury cannot be faulted for discounting her testimony for that reason.
Finally, Beavers argues that the trial court erred when it disallowed testimony from Dominique Floyd. The trial court sustained the State's objections to Floyd's testimony concerning statements that Beavers allegedly made to her "in which a person by the name of Tony was discussed." The State objected upon the grounds of hearsay, and the trial court sustained the objections. In our view, the trial court properly sustained the objections. Beavers argues that this evidence was offered solely for the purpose of showing his state of mind. That would arguably supportBeavers' testimony concerning statements made to him, but it would not justify admitting Floyd's testimony concerning statements Beavers made to her about statements allegedly made to Beavers. Beavers would necessarily be attempting to prove the truth of Beavers' statements to her, namely, that certain statements were made to Beavers.
In conclusion, we have reviewed the testimony in the record, and we find that Beavers' conviction is not against the manifest weight of the evidence. Beavers' First Assignment of Error is overruled.
 III
Beavers second assignment of error is as follows:
 THE STATE FAILED TO PROVE EVERY ELEMENT OF THE FELONIOUS ASSAULT STATUTE.
Specifically, Beavers contends that the State failed to prove that he knowingly caused, or knowingly attempted to cause, physical harm to another by means of a deadly weapon, because there was no proof that Beavers was aware that there was anybody in the house when he fired the shots. In making this argument, Beavers seems to be relying upon the testimony of Agnes Maston concerning a self-serving statement made to her by Beavers that he was not aware that there had been anybody in the house when he fired the shots.
As the State points out, although Beavers may have made this assertion to Agnes Maston, the jury was not required to credit that assertion. Beavers, who testified, admitted that the shooting occurred about an hour after he left the club. There were people in the club when he left. The club was a residence. When Beavers left the club at 6:45 in the morning after hours of drinking and gambling, it was unlikely that Robert Matson, the resident-owner of the club, was going to be leaving any time soon. The jury could reasonably infer that Beavers knew that there were people likely present in the club when the shots were fired, resulting in Farmer being wounded.
Beavers' Second Assignment of Error is overruled.
 IV
Beavers' Third Assignment of Error is as follows:
INEFFECTIVE ASSISTANCE OF COUNSEL.
Beavers' contends that his trial counsel was ineffective for having failed to call three witnesses, James McGhee, Terry Watkins, and Raney Mease. Beavers represents in his brief that these witnesses would have provided some specific, helpful testimony.
As the State points out, however, there is nothing in the record to establish that these witnesses could have provided any testimony helpful to Beavers, or, for that matter, that his trial counsel was ineffective for having failed to call them. The record of the trial does not establish that Beavers' trial counsel was aware of these witnesses, knew that they could provide helpful testimony, and was able to locate them and obtain their voluntary or involuntary testimony, but failed to do so.
Beavers' claim of ineffective assistance of trial counsel in this regard may be, and apparently has been, made in connection with a petition for post-conviction relief, but it cannot be made out in this direct appeal, since it finds no support in the record.
Beavers' Third Assignment of Error is overruled.
 V
All of Beavers' assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and WOLFF, J., concur.
Copies mailed to:
Andrew T. French
William T. Daly
HON. DAVID SUNDERLAND